Van Arsdale v. Van Arsdale.

---

MARY JANE VAN ARSDALE *vs.* WILLIAM VAN ARSDALE et al.

1. A devise of real estate, to bar the wife's dower under the statute, (*Nix. Dig.* 211, § 16,) must be to the wife herself, and not to any other person in trust for her. (*Per* GREEN, Chief Justice.)

2. A devise of a chattel interest under the statute is no bar of dower. Nor will a devise of an estate of freehold to the wife bar her dower in lands of which the testator dies intestate. (*Per* GREEN, Chief Justice.)

3. A devise to the wife of lands in another state will not bar her dower in lands lying in this state.

---

On demurrer to plea.

An action was brought in this court, by Mary Jane Van

Arsdale against William Van Arsdale and others, to recover her dower in lands in the State of New Jersey, of which Elias Van Arsdale died seized.

The defendants filed three pleas.

1. That said plaintiff and said Elias Van Arsdale were never lawfully married.

2. That said Elias Van Arsdale was never seized of such an estate in the lands and premises whereof, &c., as would enable him to endow the said Mary Jane thereof. Upon these pleas issue was joined.

The third plea was as follows :

And for a further plea in this behalf, the said William, Robert, Jacob, and Henry, by like leave of the court here for this purpose first had and obtained, according to the form of the statute in such case made and provided, say that the said Mary Jane ought not to have her dower of the lands, tenements, messuages and buildings, with the appurtenances aforesaid ; ·because, they say, that the said Elias Van Arsdale, formerly her supposed husband, in his lifetime, to wit, on the fifteenth day of May, in the year of our Lord one thousand eight hundred and fifty-one, at New York, to wit, at Newark, in the county of Essex aforesaid, was seized (amongst other things) in his demesne as of fee of and in a certain house and lot of land and premises, situate, lying, and being in the seventeenth ward of the city of New York, in the county of New York, and State of New York, and known as number seventy-nine Third street ; and being so seized thereof, on the day and year last aforesaid, at Newark aforesaid, made his last will and testament in writing, duly executed to pass real estate as well in the State of New York as in the State of New Jersey ; and by his said will the said Elias gave and devised the said house and lot of land and premises unto the executors of the said will, therein appointed and named, and the survivors and survivor of them, and the heirs of such survivor, in trust, to allow, suffer, and permit the said Mary Jane to use, occupy, possess, hold,

and enjoy the said house and lot of land and prem-
ises, and have, take, and receive the rents, issues, and profits
thereof during the time of her natural life; and by his
said will the said Elias, after making divers other devises
and bequests therein, did give, devise, and bequeath all
the rest, residue, and remainder of his estate, real and
personal, whatsoever and wheresoever, and of what nature
or kind soever the same might be, unto his brothers, the
said William, Robert, Jacob, and Henry, their heirs and
assigns forever, to be equally divided between them, share
and share alike; and by his said will, the said Elias also
nominated, constituted, and appointed his said brothers,
the said William, Robert, Jacob, and Henry, executors of
his said will; and afterwards, to wit, on the twenty-
seventh day of January, in the year of our Lord one thou-
sand eight hundred and fifty-four, at Trenton, to wit,
at Newark aforesaid, the said Elias died so seized of such
his estate of and in the said house and lot of land and
premises.

And the said will afterwards, to wit, on the eleventh
day of February, in the year of our Lord one thou-
sand eight hundred and fifty-four, was duly admitted to pro-
bate by the surrogate of the county of Essex aforesaid, by
whom letters testamentary upon the said will were then
and there duly granted unto the said Robert and Jacob,
two of the executors therein named; and the said William,
Robert, Jacob, and Henry in fact say, that at the time of
the making of the said will, as before mentioned, and
at the time of the said Elias Van Arsdale's decease, it was,
and yet is, the law of the State of New York, that every
person who, by virtue of any grant, assignment, or de-
vise, was or thereafter should be entitled to the actual
possession of lands, and the receipts of the rents and
profits thereof, in law or in equity, should be deemed to have
a legal estate therein of the same quality and duration, and
subject to the same conditions as his or her beneficial in-
terest, as by article second, of title second, part two,

chapter one, of the Revised Statutes of said State of New York, which article is entitled "Of uses and trusts," doth and may more fully appear: whereby and by virtue of the said devise in the will of the said Elias, above mentioned, the said Mary Jane, after the death of the said Elias, entered into and upon the said house and lot of land and premises, and became and was, and yet is, seized thereof in her demesne as of her freehold for the term of her natural life, and hath ever since that time hitherto possessed, held and enjoyed the said house and lot of land and premises, and received the rents, issues and profits thereof, in accordance with the terms of the said will; and the said Mary Jane did not in writing express her dissent to receive the said house and lot of land and premises in satisfaction and bar of her right of dower in the other lands and real estate devised in and by the said will, and file the same with the surrogate of the county of New York aforesaid (in which county she resided at the time of the said Elias' decease, and from thence hitherto, and in which county the said house and lot are situate) or with the surrogate of the county of Essex aforesaid, within six months after the before-mentioned probate of the said will, but wholly failed and neglected so to do.

And the said Elias, at the time of making of the said will, and from thence until and at the time of his decease, was seized in his demesne as of fee of the lands, tenements, messuages and buildings, with the appurtenances aforesaid, whereof, &c.; by means of which said several premises in this plea mentioned, and by force of the statute in such case made and provided, the said devise by the said Elias to the use and benefit of her, the said Mary Jane, of the said house and lot of land and premises, in form aforesaid made, was a full bar and recompense of all dower of the said Mary Jane of and in the lands, tenements, messuages and buildings, with the appurtenances, aforesaid. And this the said William, Robert, Jacob and

Henry are ready to verify, wherefore they pray judgment if the aforesaid Mary Jane ought to have her dower of the lands, tenements, messuages and buildings aforesaid, with the appurtenances, whereof, &c., against them, &c. .

To this plea the plaintiff filed a general demurrer, and the defendants filed a joinder.

Argued at June Term, 1857, before the CHIEF JUSTICE, and Justices ELMER, POTTS and VREDENBURGH.

*W. L. Dayton*, for the plaintiff.

*Bradley* and *Zabriskie*, for the defendants.

The CHIEF JUSTICE. To an action of dower *unde nihil habet* the defendants plead that the husband of the demandant, by his will, duly executed to pass real estate as well in the State of New York as in the State of New Jersey, gave and devised a house and lot in the city of New York, of which he died seized, to the executors of his will, in trust, to permit the demandant to use, occupy, possess, hold and enjoy the said real estate, and to take and receive the rents, issues and profits thereof during her natural life; that the testator devised all the residue of his real estate to his brothers; that the said will was duly admitted to probate by the surrogate of the county of Essex; that at the date of the said will, it was, and yet is, the law of New York, that every person who by virtue of any devise should be entitled to the actual possession of lands, and the receipts of the rents and profits thereof, in law or in equity, shall be deemed to have a legal estate therein, of the same quality and duration, and subject to the same conditions, as his or her beneficial interest; that by virtue of the said devise, the demandant, after the death of the testator, entered into and upon the said house and lot of land, and became and is seized thereof for the term of her natural life, and hath ever since that time

Van Arsdale v. Van Arsdale.

held and enjoyed the said house and lot of land, and re-
ceived the rents, issues, and profits thereof; and that the
said demandant did not, in writing, express her dissent to
receive the said real estate in satisfaction and bar of her right
of dower in the other lands and real estate devised by said
will, and file the same with the surrogate of the county of
New York (where she resided at the testator's death, and still
resides, and where the lands lie,) or with the surrogate of the
county of Essex, within six months after the probate of the
said will.

The plea is framed upon the provisions of the sixteenth
section of the act relative to dower (*Nix. Dig.* 211), which
constituted the first section of the supplement of 1820.
*Rev. Laws* 677. By that section, it is enacted as follows:
" That if a husband shall devise to his wife, by a will duly
executed to pass real estate, any lands or real estate for her
life or otherwise, and without expressing whether such
devise to her is intended to be in lieu or bar of dower, or
not, and the said wife shall survive her said husband, that
then the said wife so surviving, shall not be entitled to
dower in any lands or real estate devised by her said hus-
band, unless she shall, in writing, express her dissent to
receive the lands or real estate so devised to her in satis-
faction and bar of her right of dower in the other lands
and real estate devised in and by the said will, and file
the same with the surrogate of the county wherein she
resides, or in which the lands or real estate devised to her
shall be situated, within six months after the probate of
the said will, and then and in that case she shall be con-
sidered as renouncing the benefit of the said devise to
her."

Does the plea bring the defendants' case within the provi-
sions of that statute? I am of opinion that it does not.

1. Because, by the terms of the statute, to divest the
wife of her dower, the devise must be *to the wife.* The
legal estate must be vested in her, whereas the devise set
out in the plea is to the executors of the testator, in trust

for the wife. By the terms of the will, she takes no legal estate whatever in the premises. The distinction between a legal and an equitable estate settled upon a wife, in its effect upon her claim for dower under the English statute of uses, is well settled, and at the time of the passage of the act in question was familiar to every one conversant with the law relating to real estate. To make a jointure available under that statute to bar the wife's dower, the settlement must be to the wife herself, and not to any other person in trust for her. *Co. Litt.* 36 *b* ; 2 *Bla. Com.* 138 ; 4 *Kent's Com.* 55. The legislature, in the section now under consideration, have in terms applied the same principle to a devise to the wife. To bar the wife's dower, the statute requires that the devise should be to the wife herself. The statute is in derogation of the widow's right of dower, a right always favored in law, and should therefore be strictly construed.

But the plea does not rely upon the devise alone as a bar. It rests upon the effect given to the devise by the statute of the State of New York, where the land devised to the widow is situate. The design of the statute was to carry out the supposed intent of the devisor. A devise or bequest to a widow, if accepted, has always been held, independent of the statute, to be a bar of dower, if such clearly appeared to be the intent of the testator. If no such intention was apparent, the widow took the devise in addition to her right of dower. There is certainly no reason that she should not have both, if such were the intention of the testator. Prior to the statute, in the absence of any intent apparent upon the face of the will, the law presumed it to be the intention of the testator that the wife should take both the lands devised and the dower. The statute has, to a limited extent, changed the rule of presumption. I say to a limited extent, because if the testator declares his intention that the devise shall not be in lieu of dower, the statute has no operation, and in the absence of such declared intention, the statute

applies only in case of the devise of a freehold estate, and
then it bars dower only in the other real estate devised by
the testator. If the estate devised is a mere chattel in-
terest, the statute has no operation, nor does it affect the
widow's claim to dower in lands of which the testator dies
intestate. In these respects, the legal presumption re-
mains, that the testator did not intend that the devise
should be in lieu of dower. The statute is designed to
furnish a mere rule of interpretation. It determines, in
given cases, the intent of the testator. Upon what prin-
ciple is the statute of another state, of which the devisor
cannot be presumed to be cognizant, to aid in that inter-
pretation? How can that tend to throw light upon the
intent of the testator? The law of the testator's domicil,
of which he is presumed to be cognizant, declares that a
devise of a freehold estate to a wife shall bar her dower
in his estate. If the testator devises to his wife a term of
twenty years in lands lying in this state, it does not bar
her dower. If he makes a similar devise of lands lying
in another state, where the law declares that a term of
twenty years shall be deemed a freehold estate, can it be
that such devise will bar her dower? If so, then the con-
verse of the proposition must be equally true; and the
result is, that the construction and effect of the testator's
will, in its operation upon titles to land in this state, is
made to depend upon the law of another sovereignty. The
doctrine is in direct conflict with the well-settled rule of the
common law. *Robinson* v. *Bland,* 2 *Burr.* 1079; *Story's
Conf. L.,* § 364.

2. But the decision of this case must rest upon the
broader ground, that a devise of land lying in another
state cannot bar dower. The statute applies, alone, to a
devise of land lying in this state. It is true that the terms
of the enactment are broad enough to comprehend real
estate, wherever situate; but so are numerous other pro-
visions of the statute, which of necessity must be subject
to this limitation. Thus the first section, which declares

that the widow shall be endowed of all the lands whereof the husband was seized of an estate of inheritance at any time during coverture, must of necessity be construed to apply only to lands within this state. So the sixteenth section declares that unless the widow express her dissent to receive the devise in satisfaction of dower, she shall not be entitled to dower in *any* real estate *devised by her husband*. But the legislature surely did not intend to regulate dower in lands lying in New York. Real estate is universally governed by the *lex sitæ*. All legislation on the subject must be deemed to apply only to lands within the jurisdiction of the law maker, and all expressions in the act, however comprehensive, unless a contrary intent clearly appears, must be qualified by this limitation.

Again, the dissent to receive the dower is to be filed in the surrogate's office of the county where the widow lives, or where the lands lie. It never could have been within the contemplation of the legislature that the dissent spoken of should be filed in the surrogate's office of a foreign state. No such notice has ever been recognized by our law. The plain meaning of the statute is, that if the widow lives within this state, and in a different county from that in which the lands lie, the dissent may be filed in the surrogate's office of either county. But if the widow resides abroad, the dissent must be filed in the surrogate's office of the county where the lands lie; and that office, it is obviously contemplated, shall be within this state.

It is further averred in the plea, that no dissent was filed in the surrogate's office of the county of Essex, where the testator had his domicil. But that, in any event, would have been an unmeaning ceremony, not coming within the purview of the statute.

The facts stated in the plea constitute no bar to the action. The plaintiff is entitled to judgment upon the demurrer.

Potts, J. To an action brought by the plaintiff to recover her dower in lands of her late husband in New Jersey

the defendants, who are the devisees of the land, plead, among other things, that the said husband, by his will, devised to his executors a certain house and lot in the city of New York, in trust, to allow, suffer, and permit the said Mary Jane to use, occupy, possess, hold, and enjoy the same, and have, take, and receive the rents, issues, and profits thereof during the time of her natural life; and that, at the time of the testator's death, it was, and yet is, the law of the State of New York, that every person who, by virtue of any grant, assignment, or devise, was, or thereafter should be, entitled to the actual possession of lands, and the receipt of the rents and profits thereof, in law or in equity, should be deemed to have a legal estate therein, of the same quality and duration, and subject to the same conditions as his or her beneficial interest.

There is a demurrer to this plea; and the question is, do the matters pleaded constitute a good bar to the action. In other words, does a devise of land in New York to trustees in trust for the widow for life, without expressing whether it is intended to be in lieu or bar of dower or not, operate as a bar by virtue of the 16th section of the act relative to dower, (*Nix. Dig.* 211,) the widow not having dissented?

The language of the section referred to is—" If a husband shall devise to his wife, by will duly executed to pass real estate, any lands or real estate, for her life or otherwise, and without expressing whether such devise to her is intended to be in lieu or bar of dower, or not, and the said wife shall survive her said husband, that then the said wife so surviving shall not be entitled to dower in any lands or real estate devised by her said husband, unless she shall, in writing, express her dissent to receive the lands or real estate so devised to her in satisfaction and bar of her right of dower in the other lands and real estate devised in and by the said will, and *file the same with the surrogate of the county wherein she resides, or in which the*

*lands or real estate devised to her shall be situated,* within six months after the probate of the said will, and then and in that case she shall be considered as renouncing the benefit of the said devise to her."

It will be perceived that the testator has not said, in the will, that it was his intention this devise should be in lieu of the wife's dower. The point of the plea is, however, that such is the legal construction of the devise. But the language of the statute is, "if a husband shall devise to his wife" any lands, &c. And here the devise is not to the wife, but to the executors, in trust for her use for life. The devise, therefore, is not within the words of the statute. Nor does the statute of New York, which is pleaded, help the case in this aspect of it. The bar is where the land is given by the will, not by operation of the law of a foreign jurisdiction.

But it is now to be considered as well settled, that where there is a bequest or devise to the wife, without saying it is in lieu of dower, yet if such is the clear and manifest intention of the testator, as gathered from the will itself or from circumstances, then such devise will put the widow to her election. This I take to be the question in this case—the question of intention; and in examining it, we are of course confined to the matters set up in the plea.

The plea sets up a devise by the testator, in his will, of a house and lot in the city of New York to trustees, for the use of the wife for life. And it also sets out a law of the State of New York, by force and operation of which it is insisted that the widow, under this devise, takes a legal estate in the property so devised for the term of her natural life. It also alleges that the widow has accepted the devise, and entered into possession of the said house and lot, &c. And it is argued that these facts, pleaded and admitted by the demurrer, constitute a good bar to the widow's action of dower, for that if the devise is not to be taken as in lieu of dower by the strict words of the

statute of New Jersey, yet that they manifest the clear *intention* of the testator that it was so to be.

The claim of the widow, who is the plaintiff in this action, is for her dower in the lands of the testator in New Jersey, which by his will he devised to his brothers. It is, therefore, distinguishable from a large class of cases in which the same land out of which dower was claimed had been devised conditionally, or for a specified term of years, to the wife, or had been charged with pecuniary bequests made to her, or with her maintenance and support; and in several of which cases this fact furnished a successful argument against the claim. There is nothing in the case now before the court but the naked fact of a valuable property devised, which operates as a devise to the wife for life, admitting such to be its effect in the place where the property is located.

A reference to a very few of the numerous cases in the books will be sufficient to present the general course of decision upon the construction of wills with respect to the intention of testators relative to dower.

The case of *Adsit* v. *Adsit*, 2 *Johns. Ch. R.* 448, is valuable, not only for its clear and forcible exposition of legal principles, but for its succinct review of the English authorities. The bequest in the will to the wife, in that case, was of such of testator's household goods *as she might need*, and a pecuniary legacy to be left in the hands of the executors, to be paid to her *for her support*, at any time and at all times, as her need might require. *The wife was ninety-one years of age.* The testator had contracted to sell his real estate before his death for $6000, and ordered his executors to sell; and had disposed of the proceeds in legacies to his wife, children and grandchildren. But the Chancellor held that no intention to bar the wife's dower was deducible from the will; and in the light of all the adjudications in England up to that time, which he examined, he states these propositions: 1. That every devise or bequest imports a bounty, and does not naturally

*imply* satisfaction of a pre-existing encumbrance. 2. That the title to dower is paramount to the testator's title, and he has no control over it; and that a devise of the lands to trustees to sell, or a direction to the executors to sell, is understood to pass the estate subject to dower. 3. That to enable courts to deduce from the provisions of a will the implied intention to bar dower, the claim of dower must be inconsistent with the will, and repugnant to its dispositions, or some of them; it must, in fact, disappoint the will. This, he say$, appears to be the result of a historical review of the cases.

In *Smith* v. *Kniskern,* 4 *Johns. Ch. R.* 9, a testator bequeathed to his wife his household furniture, and her comfortable support and maintenance out of his estate, to be from time to time rendered and paid to her by his executors, and the use of a room in his dwelling-house during all such time as she should continue to be his widow, and no longer; and it was held that, though the charge of a comfortable support and maintenance might fall upon the real as well as the personal estate, yet it did not affect the widow's right to dower. The Chancellor said, "the rule is, that the widow takes both provisions, unless the estate is insufficient to support both, or such inconsistencies appear between the provision of the will and the dower as to make the intention *clear and indubitable* that both provisions were not to be taken."

In *Sanford* v. *Jackson,* 10 *Paige.* 266, the testator devised all his property, real and personal, to his wife and two other persons, to be kept for her use and support so long as she should continue his widow, and until his youngest child should become of age; and then directed that his property should be equally divided among his children. The wife married again, and held possession of the estate till the youngest child came of age, and then claimed her dower; and the court held that she was entitled to have it. The Chancellor said, "to bar her of her dower by implication, when the testator has not in terms declared

his intention on the subject by his will, the provisions of the will, or some of them, must be *absolutely inconsistent with her claim of dower;* so that the intention of the testator will be defeated, as to some part of the property devised or bequeathed to others, if she takes her dower, as well as the provision made for her in the will."

In accordance with these cases is the case of *Bull* v. *Church,* 5 *Hill* 206, affirmed on writ of error in 2 *Denio* 430, as well as the late English cases of *Ellis* v. *Lewis,* 3 *Hare* 310, and *Harrison* v. *Harrison,* 1 *Keene* 765. And see 2 *Story's Equity,* § 1088, and *note* 4. Mr. Justice Story, affirming the principles of the foregoing cases, says, " the right to dower being in itself a clear legal right, an intent to exclude that right by a voluntary gift ought to be demonstrated either by express words or by clear and manifest implication. In order to exclude it, the instrument itself ought to contain some provision inconsistent with the operation of such legal right." And he adds, " the gift of a portion of his real estate to his widow for life or during widowhood is not sufficient to put her to an election as to the residue of his real estate." And in the note referred to, he cites several cases in support of the principles he states.

There can be no doubt, then, that, according to the principles of construction settled in these cases, the devise in question could not be held to put the widow to her election. The testator has expressed no such intention in the will, nor is there anything in the will from which such an intention can be implied. It cannot be implied from the fact that he has devised a portion of his real estate to her use for life, nor from the fact that he has devised the residue of his real estate to his brothers: for this is not inconsistent with the intention that the lands so devised should be subject to her dower. The estate will support both provisions. The will is not disappointed. The devise imports a bounty merely, and does

not naturally imply satisfaction of the pre-existing encumbrance of the widow's dower.

It is true that the first section of the supplement of 1820, which now stands as the sixteenth section of the act relative to dower, above referred to, has introduced a different rule of construction in cases where there is a devise of land *to the wife*, from that which had previously prevailed. Under that statute our courts have held that a devise to the wife of a room or rooms in the testator's dwelling-house, or a portion of his real estate for a definite period, will put the widow to her election. *White* v. *White*, 1 *Harr.* 202; *Morgan* v. *Titus*, 2 *Green's Ch. R.* 201 ; *Thompson* v. *Egbert*, 2 *Harr.* 459. And the same principle would reach such cases as that of Smith *v.* Kniskern and Sanford *v.* Jackson, and many of the English cases referred to in those cited. But while the statute is decisive as a rule of construction in all cases within its words and to which it applies, yet I apprehend we are not warranted in extending its operation by holding that all cases of devise are to be construed, with reference to dower, by *analogy* to this statute, whether they are within its words or not. The legislature have defined the rule with precision ; if they had meant it to extend further, they would have said so. If we were to adopt the principle of construction by analogy to the rule of the statute, every devise of an interest for the benefit of the widow growing out of or charged upon the land, however small or insignificant as a provision for her support, would put her to her election, unless expressed as not to be in lieu of dower.

The cases in this state, decided since the sixteenth section of our act has been in operation, do not support the construction contended for by the defendants.

In *Stark* v. *Hunton*, *Saxton* 216, the testator devised *to his wife* all his tavern-house and lot where he then lived, together with all the furniture and stock in the same, for life, provided she remained his widow ; and if she married again, then that the property be disposed of according to

law. She married, and claimed dower in the estate so devised. The Chancellor held that she was not entitled to dower—1. Because he considered that it was the manifest *intention* of the testator that the devise should be in lieu of dower; that he could not have intended that she should hold one-third of the house as dowress, and two-thirds as devisee; that the two claims were inconsistent, and could not stand together. And 2. Because the devise came within the operation of the statute, this being a devise of lands *to her*. The view taken by the Chancellor in this case, independent of the statute, was in accordance with the English cases and those cited from New York. The very estate out of which she claimed dower had been devised to her during widowhood; she had accepted the devise. The decision was, that the devise of the whole estate to her, by clear and indubitable implication, excluded the intention that she should have dower out of that estate. The Court of Errors reversed this decision, and gave her dower, not upon the ground, as I understand it, that this reasoning was wrong, as far as it went, but that by providing for the ultimate disposition of the estate *according to law*, the testator meant she should have dower in case the devise was defeated by her subsequent marriage. *Halst. Dig.* 393, *pl.* 49.

In *White* v. *White*, 1 *Harr.* 202, the testator devised, among other things, a comfortable maintenance out of his real estate to his wife, during life or widowhood; and, subject to that charge, gave all his real estate to his sons. The will did not say this devise was in lieu of dower, but the court held that such was the clear intention; because, having made her maintenance a charge upon his whole real estate, and the sons taking it subject to that burthen, to give the widow one-third of it for life would derange the whole settlement of the estate. In other words, that it could not have been the intention of the testator to charge the whole land with the widow's support, and at

the same time to give her one-third of that which was to bear the burthen.

*Thompson* v. *Egbert*, 2 *Harr*. 459, was the case of a devise *to the wife* of the use of all the testator's real estate not otherwise disposed of, until his youngest son should arrive at twenty-one, without saying whether it was intended in lieu of dower or not. The land was subsequently sold for the payment of testator's debts ; and the court held that, though this was such a devise as would bar under the statute, yet, being evicted, she could claim dower under the doctrine that the testator's intention is the controlling consideration ; and he could not have meant, if the gift failed, that she should lose her dower.

It will be perceived that the devise in each of the above cases is either, within the words of the act, a devise of land to the wife, or the devise itself clearly indicates, by implication, the testator's intention that it is in lieu of dower. They are distinguishable, therefore, from the case now before the court.

But stress is laid, in this case, upon the statute of New York. It is argued that we are to presume the testator knew of the existence of this statute, as the property he devised for the widow's use was in New York ; and that as, by operation of that statute, this use is converted into a legal estate, the devise was, in effect, the devise of a legal estate *to the wife* for life, and was, therefore, intended by the testator as a devise within the words of the sixteenth section of our act. But if it was the intention of the testator to make such a devise of this property in New York as would put the wife to her election whether she would take it or her dower, why did he not use words which would bring it within the statute ? Why not devise the house and lot to the wife directly ? Why take the pains to devise it to trustees for her use ? The words of the will are the best expositors of what he meant who made the will. The question is not, whether he knew that, by operation of the local law in New York, she would take

Van Arsdale v. Van Arsdale.

a legal estate under the devise, but whether he intended that the devise should be in lieu of dower, by operation of law in New Jersey ; and he uses words which do not imply such an intention. To say the least, it leaves the question of intention doubtful ; and, where there is doubt, the doubt will always be resolved in favor of dower.

I am of opinion the plea is bad, and that the demurrer should be sustained.

VREDENBURGH, J. This is the ordinary suit for dower. The third plea sets forth that the testator, the husband of the demandant, by will made in New Jersey, dated the 15th of May, 1851, duly executed to pass real estate in New York, as well as in New Jersey, devised a lot in the city of New York to his executors in trust, to allow, suffer, and permit the demandant to use, occupy, possess, hold, and enjoy the same, and have, take, and receive the rents, issues, and profits thereof during her life, and devised the rest of his estate to the defendant ; that the said testator, on the 27th January, 1854, died seized of said lot ; that the said will was admitted to probate on the 11th February, 1854, in this state ; that, at the making of the will, and at the decease of the testator, it was the law of New York that every person who by will was entitled to the actual possession of lands, or the receipt of the rents and profits, in law or equity, should be deemed to have the legal estate therein to the extent of his beneficial interest, whereby the demandant became seized of said lot ; and that she did not, in writing, express her dissent to receive said lot in bar of dower, and file the same with the surrogate of the county of New York, where she then resided, and where said lot is situated.

To this plea there is a general demurrer. It is not contended that, independently of the statute, it would be presumed that the testator, by the language of this will, intended the devise to be in lieu of dower. The devise to the wife is presumed to be a gratuity ; and when the

testator devises all the residue of his estate, he is deemed to intend to convey only his own interest in the land, and not that of his wife.

The question, therefore, depends upon the construction of the 16th section of the act relative to dower. *Nix. Dig.* 211. This provides that, if a husband shall devise to his wife, by will duly executed to pass real estate, any lands for her life, without expressing whether such devise is intended to be in lieu of dower or not, she shall not be entitled to dower in any lands devised by her husband, unless she shall, in writing, express her dissent to receive the lands so devised to her in bar of dower in the other lands devised by said will, and file the same with the surrogate of the county wherein she resides, or in which the lands devised to her are situated, within six months after probate of the will, and then she shall be considered as renouncing the benefit of said devise to her.

The demandant contends that this statute is no bar, for two reasons—

First, because this devise to the wife is not of lands to her, but to trustees, to permit her to receive the profits; second, because the lands devised to her are not in this state, and therefore not embraced within the meaning of the act.

The conclusion we have come to upon the second question makes it unnecessary to consider the first.

Does this 16th section apply at all to wills where the devise to the wife is only of land out of the state?

The defendant contends that this is a statute construing the intent of the testator, and that, since its passage, in all devises to the wife, the testator must be deemed to have intended the devise to be in lieu of dower.

This can be true only to the extent that the statute was intended to change the law from what it was before. It was its intention, undoubtedly, to say that a devise of lands in this state should bar dower, and, consequently, so far construes such to have been the intent of the testator.

But if it was not the intention of the statute to say that a devise of lands out of the state should bar, it could not be that by a devise of lands out of the state, the testator could have intended the devise to be in lieu of dower.

The question, therefore, really is, does this 16th section apply at all to a devise to a wife of lands out of the state. It appears to me that it does not. The language of the statute is not, if a husband shall devise lands wherever situate; or by will executed to pass lands where the lands are situated, but generally, if a husband shall devise to his wife, by will duly executed to pass real estate, any lands, it shall bar. Now the legislature, when speaking of lands, without further specification, must be deemed to be speaking only of lands within their own jurisdiction. If they had intended lands elsewhere, they would, probably, have said, " wherever situated," or they would have said, " where there is a devise of any lands, the testator shall be construed to have intended them in lieu of dower."

On the contrary, there is abundant evidence in this section that the legislature did not intend to embrace the case of a devise of lands out of the state. The bar only arises where there is " a devise to the wife of any lands by will duly executed to pass real estate." It must be a devise, that is, the devise must pass the land to her; it must be by will duly executed to pass it. What is meant by a will duly executed? Must it not mean so executed as that by law it will pass real estate? But by what law? The law of the place where the will is made, or by the law of the place where the land is situated. The presumption is that by these terms, " duly executed," the legislature intended duly executed by the laws of this state.

Now no will can be duly executed by our own laws to pass lands out of this state. Lands out of the state pass only by force of the laws where they are situated. Could our legislature have intended to say duly executed by the laws of the place where the lands are situated? If they did, then the will might pass no lands in this state, and

the widow would, consequently, come in for her dower here; for there would then be no devise of the lands in this state at all.

Again, the words " any lands " are used twice in this section. It first says, " if a husband shall devise any lands to his wife, she shall be barred of dower in any lands," unless, &c. This last must refer certainly only to lands in this state; for the legislature cannot prescribe upon what terms dower shall be barred in other states. Could the words " any lands," in the first part of the section, mean lands anywhere, and in the middle of the same sentence mean lands only in this state ?

The intent is further manifested from the latter part of the same section. This provides that the dissent shall be filed by the widow; in six months from probate, with the surrogate of the county wherein she resides, or in which the lands devised to her are situated.

Could the legislature intend to prescribe a thing upon which title to lands in their own state depended to be done in a foreign state or in a foreign tribunal ? If they intended the surrogates in our own counties, they were compelled by our own laws to file the dissents. But how could we compel the tribunals of other nations to receive papers under the orders of our legislature ? By what power could our legislature go, by its agents, into the archives of a foreign nation, and demand to use their officers ? Can we believe that it could do a thing so disrespectful to the sovereignty of a foreign government, or so unworthy of its own ? The practice act says the sheriff shall serve the summons at the defendant's place of abode. Does that mean he shall serve it out of the state ?

But there are many countries where there are neither surrogates or counties. What shall be done in such a case? The defendant answers this question by asking another ; he asks if it would defeat the act, if the office of surrogate was abolished. The answer is obvious. So far as regards our own surrogates and counties, the whole

thing is under the control of our own legislature; and if they should abolish the office, the presumption is that they would provide for the new contingency, or would be deemed to have intended to repeal the law.

I am of opinion that a devise of land barring dower, under this 16th section, can be only of land situated in this state, and that consequently the plea is bad.

ELMER, J., concurred.